**Christopher Rufus WILLIAMS, Plaintiff,**

v.

**UNITED STATES PAROLE
COMMISSION,
Defendant.**

Civ. A. No. 93–2009.

United States District Court,
District of Columbia.

July 26, 1994.

Ronald Gilchrist, Washington, DC, for plaintiff.

John Michael Facciola, U.S. Attorney's Office, Washington, DC, for defendant.

*MEMORANDUM OPINION
AND ORDER*

SPORKIN, District Judge.

Plaintiff Christopher Williams, a federal prisoner, brings this petition for a writ of *habeas corpus* seeking relief from an allegedly illegal sentence. Defendant, United States Parole Commission ("Commission"), maintains that because the plaintiff was sentenced lawfully, he is not entitled to relief. For the reasons set forth below, plaintiff's petition is granted.

*BACKGROUND*

The facts in this case bear detailed recitation. Plaintiff was sentenced on April 30, 1976 by the United States District Court for the Eastern District of New York to a five year term of imprisonment to be followed by a five year term of special parole. The plaintiff's appeal of his sentence was denied, and he began serving his term of imprisonment on April 29, 1979. He was released on April 7, 1982 to serve the remainder of his prison term on ordinary parole.

On April 4, 1984, the plaintiff commenced his five year term of special parole. Almost two years later, the Commission issued a warrant for the plaintiff's arrest, charging him with technical violations of the conditions of his special parole, including failure to report a change of residence.[1] The plaintiff was arrested on December 18, 1988 and incarcerated pending a revocation hearing. At the June 7, 1989 revocation hearing, the Commission revoked his special parole and denied the plaintiff credit for the approximately 31 months he spent on special parole. The Commission sentenced the plaintiff to a term of incarceration and a term of special parole. The plaintiff appealed the sentence.

---

1. The Commission supplemented the warrant on February 22, 1989 to include plaintiff's arrests on charges of theft and distribution of marijuana.

On January 17, 1990, the National Appeals Board/Full Commission affirmed the parole examiner's decision and ordered the plaintiff incarcerated for fifteen months. On March 21, 1990, after serving his prison sentence, the plaintiff was reparoled to the remaining 45 months of his special parole term.[2] This 45 month term of special parole was due to expire on December 20, 1993.

Once again, however, the plaintiff ran afoul of the terms of his release. On May 20, 1993, seven months before the expiration of the special parole term, the Commission issued a warrant charging the plaintiff with violations of his parole; e.g., failure to submit supervision reports, use of dangerous drugs, and violation of special drug aftercare conditions. At his September 27, 1993 revocation hearing, the Commission determined that he had violated the conditions of his special parole. The Commission revoked the plaintiff's special parole and denied him credit for the approximately 38 months spent on special parole. For his transgressions, the plaintiff was sentenced to 16 months in prison. He was then released back onto special parole. The Commission's decision was affirmed on appeal. The plaintiff presently is eligible for parole on September 18, 1994, at which time he will have 29 months left to serve on special parole.

DISCUSSION

██ The statutory authority for revoking special parole is found in 21 U.S.C. § 841(c) (1984). The section in its entirety provides as follows:

A special parole term imposed under this section or section 859, 860, or 861 of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term

of imprisonment. A special parole term provided for in this section or section 859, 860, or 861 of this title shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c) (1984). Although this section was repealed by the Comprehensive Crime Control Act of 1984, the criminal conduct for which plaintiff was sentenced in 1976 occurred before 1984, so plaintiff remains subject to its terms. See United States v. DeJohnette, 752 F.Supp. 849 (N.D.Ill.1991).

The government presents two arguments in support of its position that the Commission acted appropriately. First, the government claims that in 1989 and 1993 the Commission properly denied plaintiff credit for the time he spent out of prison on special parole ("street time"). Its position is that under the terms of the statute, violators of the terms of special parole must forfeit street time. Munguia v. U.S. Parole Comm'n, 871 F.2d 517 (5th Cir.1989).

Second, the government claims, that with respect to the original 1976 sentence, plaintiff was properly denied a 180 day reduction in prison time. The argument is based on 18 U.S.C. § 4164 (1984) which provides that

A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days.

18 U.S.C. § 4164 (1984). According to the government, § 4164 applies to those persons "mandatorily released" from custody, having served their prison term less time deducted for good conduct. The government's argument is essentially as follows. The plaintiff was never mandatorily released from his 1976 prison sentence. He was paroled in 1982 with approximately two years remaining on his original five year term. Since § 4164 is inapplicable to the plaintiff, he is not entitled to the requested 180 day credit.

**2.** On March 20, 1990, the Commission issued another warrant charging the plaintiff with conspiracy to possess and distribute cocaine and marijuana. The warrant was withdrawn when

the Commission discovered that this was the same charge that appeared in the February 1989 warrant.

In spite of these arguments, the Court finds plaintiff is entitled to the relief he seeks. The Court finds persuasive the reasoning of courts addressing a similar issue in the context of revocation of supervised release. These cases hold that there is no statutory authority for the imposition of a post-revocation term of supervised release. 18 U.S.C. § 3583 (1994), which governs alteration of supervised release, provides in relevant part that a court may

> revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3583(e)(3) (1994).

For example, in *United States v. Holmes*, 954 F.2d 270 (5th Cir.1992), the Fifth Circuit held that a defendant could not be required to serve the remainder of a term of supervised release after it was revoked because once revoked, the sentence no longer existed. *Id.* at 272. In summary, the defendant-appellant in *Holmes* was sentenced to two years incarceration followed by three years supervised release. While serving his term of supervised release, Holmes violated its terms. Five months later, the district court sentenced him to 13 months incarceration and 31 months of supervised release.

The Fifth Circuit reasoned that the plain meaning of the word "revoke" in the statute is to cancel or rescind. It follows therefrom that once revoked, a term of supervised release is extinguished and there must be legal authority for imposing another sentence of supervised release. The court found no such provision in the statute.

The statute provides two post-revocation sentencing options, requiring the person to serve in prison either "all or part of the term of supervised release without credit for time previously served on postrelease supervision." The court noted that "[w]e do not think the district court sentences a defendant anew when it revokes or modifies the conditions of supervised release. The sentence has already been imposed, and the district court is only altering its terms." *Holmes*, 954 F.2d at 272.

The Fifth Circuit is not alone in this view. The Second Circuit has also held, in *United States v. Koehler*, 973 F.2d 132 (2nd Cir. 1992), that after revoking an original term of supervised release and imposing a term of imprisonment, a district court lacked authority to reimpose a term of supervised release. *Id.* at 133. Defendant-appellant in *Koehler* was sentenced to 28 months imprisonment followed by a three year term of supervised release for violating terms of her probation. After she pled guilty to violating the terms of her supervised release, the district court revoked her supervised release and sentenced her to one year in prison to be followed by a new three year term of supervised release.

The Second Circuit vacated the sentence. It found that the plain language of the statute unambiguously precluded the imposition of a new sentence of supervised release after revocation of supervised release, and the district court was limited to the sentencing options presented by the statute—a term of imprisonment equal to the length of the term of supervised release or imprisonment for less than the term of supervised release. So limited, the district court could not employ the full range of sentencing options.[3]

This Court finds the analysis employed in the above cases directly applicable in this case. As this case turns on statutory construction, the Court looks first to the language of the special parole statute. Section 841(c) governs the revocation of special pa-

---

**3.** The views expressed in *Holmes* and *Koehler* are endorsed by other Circuits. *See United States v. Truss,* 4 F.3d 437 (6th Cir.1993); *United States v. McGee,* 981 F.2d 271 (7th Cir.1992); *United States v. Cooper,* 962 F.2d 339 (4th Cir.1992); *United States v. Rockwell,* 984 F.2d 1112 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993); *United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990). *But see United States v. O'Neil,* 11 F.3d 292 (1st Cir.1993); *United States v. Schrader,* 973 F.2d 623 (8th Cir.1992).

role and the consequences to the parolee of such revocation. It is of central importance to the Court's task to determine the meaning of the word "revoke" as used in section 841(c). Webster's Ninth New Collegiate Dictionary defines "revoke" as "to annul by recalling or taking back" or to "rescind."[4] The Court finds no suggestion that Congress intended any meaning for the word "revoke" other than in its usual sense. Accordingly, the Court is satisfied that as used in § 841(c), to revoke a term of special parole is to annul it, thereby extinguishing it.

Next, the Court examines the consequences of revocation. Section 841(c) sets forth explicitly the sentencing options available upon revocation of special parole. The section allows only a sentence of incarceration and, significantly, contains no provision for a new sentence of special parole.[5] It also affords the sentencing body the discretion to require the parole violator to serve less than the entire term of incarceration. Clearly, Congress contemplated here "a specific sanction for violation of a special parole term." *United States v. Davi*, 588 F.Supp. 91, 91 (E.D.N.Y.1984). The Court finds the sanction unambiguous and its purpose clear: "to provide added inducement to [defendant] that he not revert to prior illegal activities, upon his release from prison." *United States v. Mannino*, 780 F.Supp. 995, 998 (S.D.N.Y.1991).

The Court holds, on the basis of the foregoing, that the term of special parole the Commission imposed on the plaintiff in 1989 was not authorized by law. When the Commission exercised its discretion to require the plaintiff to serve a prison term of 15 months, it was thereafter foreclosed from imposing any additional sentence of special parole flowing from the plaintiff's parole violations. The plaintiff fulfilled his obligations to soci-

ety stemming from his parole violations when he completed his 15 month term of incarceration in March 1990. Because the subsequent 45 month term of special parole was unlawful, and any sentences resulting solely from violation of its conditions were also unlawful. The Commission ceased to have jurisdiction over the plaintiff on March 21, 1990.

■ As a second ground for granting the petition, the Court finds the plaintiff's continued incarceration to be illegal because the Commission abused its discretion in sentencing this plaintiff. The Commission twice had the opportunity to sentence the plaintiff to a term of imprisonment equal to the length of his special parole term. The statute grants such discretion to the Commission and the Court finds that the discretion was abused. By the time of the plaintiff's 1993 revocation hearing, the plaintiff had demonstrated that he was unable or unwilling to comply with the terms of his parole, yet the Commission imposed a sentence that would eventually place him back onto special parole. The practical effect of such sentencing is to release a parolee to the community, incarcerate him for violations of conditions of parole, then re-release him onto special parole with, as it turned out in this case, a repetition of the whole process later. This "yo-yo sentencing" cannot be countenanced.

The plaintiff still has 29 months of special parole to serve on a sentence originally imposed in 1976. The plaintiff is now 54 years old. If he reverts to prior form and again runs afoul of the technical requirements of his parole he may well parlay a five year sentence into a life sentence. This type of sentencing went out with the Dark Ages. The Commission, in placing form over substance, clearly has abused its discretion.

4. "Annul" is defined in the same source as "to reduce to nothing: obliterate 2: to make ineffective or inoperative: neutralize ... 3: to declare or make legally invalid or void."

5. The regulations pertaining to revocation of parole contemplate post-revocation sentence of special parole. 28 C.F.R. §§ 2.57 and 2.52. Section 2.57(c) states that "[s]hould a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term as provided in § 2.52, and

subject to reparole or mandatory release under the Special Parole Term." Section 2.52(a)(2)(b) provides that "[i]f parole is revoked pursuant to this section, the Commission shall also determine, on the basis of the revocation hearing, whether reparole is warranted or whether the prisoner should be continued for further review." Nonetheless, regulations promulgated by the Commission cannot alter the intent of Congress as expressed in 21 U.S.C. § 841(c).

## CONCLUSION

For the reasons set forth above, the plaintiff's petition for a writ of *habeas corpus* is granted. An appropriate order accompanies this opinion.

## ORDER

Upon consideration of the plaintiff's petition for a writ of *habeas corpus,* the defendant's response, and the oral argument at the hearing on this matter, it is hereby

**ORDERED** that plaintiff's petition is granted. It is further

**ORDERED** that plaintiff's September 27, 1993 sentence of 16 months incarceration to be followed by 29 months of special parole is vacated, and it is further

**ORDERED** that the plaintiff, Rufus Williams, be released from custody immediately.