Robert CHILCOTE, Petitioner,

v.

BUREAU OF PRISONS, Respondent.

Civ. No. 1:94cv303.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 29, 1994.

Robert Chilcote, pro se.

David H. Miller, U.S. Attys. Office, Fort Wayne, IN, for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a petition for writ of habeas corpus filed on October 11, 1994. A telephone conference was held on November 10, 1994 and the parties completed briefing the matter on December 21, 1994. For the following reasons, the writ of habeas corpus will be denied.

### Background

On July 30, 1981, petitioner Robert Chilcote ("Chilcote") was convicted of drug and assault charges and sentenced to six years of imprisonment and three years of special parole. Chilcote appealed and lost, and began serving his six year sentence on August 24, 1984. On March 23, 1988, Chilcote was mandatorily released on regular parole. His regular parole expired on May 2, 1989, and he began serving his special parole term on that date. On August 29, 1991, Chilcote's special parole term was revoked and he was incarcerated until October 11, 1991, at which time Chilcote was paroled again. This second term of parole was to expire on June 10, 1994. However, on May 24, 1994, Chilcote was taken into custody on a parole violation warrant.

*Issues*

The first question presented to the court is whether Chilcote's due process rights have been violated. Chilcote points out that when he was released on October 11, 1991, he was released pursuant to a "Certificate of Parole", rather than pursuant to a "Certificate of Special Parole Term". Chilcote claims that the United States Parole Commission, by failing to issue a "Certificate of Special Parole", failed to sufficiently inform Chilcote of his conditions of release and the possible ramifications if he violated his terms of parole. Specifically, Chilcote argues that his "due process rights were violated in that he was not aware at the time of being placed back on parole on October 11, 1991, that he could have been stripped of his 'street time credit.'" Petitioner's Brief at 4.

Chilcote first cites to the Regulations promulgated by the United States Parole Commission pursuant to 18 U.S.C. § 4203(a)(1)[1]. Chilcote refers the court to 28 C.F.R. § 2.57(d), which provides as follows:

(d) If a prisoner is reparoled under the revoked Special Parole Term a certificate of parole to Special Parole Term is issued by the Commission. If the prisoner is mandatorily released under the revoked "special parole term" a certificate of mandatory release to Special Parole Term will be issued by the Bureau of Prisons.

Chilcote claims that this Regulation *requires* the United States Parole Commission to issue a "Certificate of Special Parole" to insure that the special parolee is aware of his status and the possible ramifications faced by him if his special parole is revoked. In support of this argument, Chilcote further cites to 18 U.S.C. § 4209(b), which provides that:

1. 18 U.S.C. § 4203(a)(1) provides:

(a) The [United States Parole] Commission shall meet at least quarterly, and by majority vote shall—
(1) promulgate rules and regulations establishing guidelines for the powers enumerated in subsection (b) of this section and such other rules and regulations as are necessary to carry out a national parole policy and the purposes of this chapter.

2. It is worth noting that there is no evidence before this court that would suggest that a "Cer-

(b) The conditions of parole should be sufficiently specific to serve as a guide to supervision and conduct, and upon release on parole the parolee shall be given a certificate setting forth the conditions of his parole. An effort shall be made to make certain that the parolee understands the conditions of his parole.

Chilcote also cites to *Jessup v. United States Parole Commission*, 889 F.2d 831, 835 (9th Cir.1989), wherein the Court stated that "[i]t is well settled in this circuit that the Commission's failure to provide prior notice of the possible consequences of a parole revocation hearing violates the parolee's due process rights."

■ This court finds Chilcote's assertions that he was entitled, as a matter of right, to be given a "Certificate of Special Parole" to be unsupported by the law. First, 28 C.F.R. § 2.57(d) does not support Chilcote's position because the Regulation is clearly a procedural guideline for the Bureau of Prisons and was not meant to confer a substantive right on behalf of parolees. The Regulation merely informs the Bureau of Prisons what type of certificate "is" to be issued or "will" be issued and does not state that a particular type of certificate *"shall"* be issued.

■ Second, 18 U.S.C. § 4209(b) does not support Chilcote's argument that he was entitled to a notification, at the time of release on parole, of the possible consequences of violating parole. Section 4209(b) merely provides that a "parolee shall be given a certificate setting forth the *conditions* of his parole." (Emphasis added). This section does not require that a parolee be warned of the *ramifications* of violating parole[2]. A review of the "Certificate of Parole" which Chilcote

tificate of Special Parole" contains language informing a special parolee of the specific ramifications of violating special parole, such as loss of street time.

Additionally, the "Certificate of Parole" does not inform the parolee of all the specific ramifications of violation of regular parole, such as loss of street time if convicted of a crime, but only states generally that the parolee may be recommitted if he violates the conditions of his parole. Thus, it appears to be immaterial whether Chilcote received a "Certificate of Parole" or a "Certificate of Special Parole".

was given shows that it clearly sets out numerous conditions of parole. Particularly relevant to this discussion are conditions six and nine, which inform Chilcote that he "shall not violate any law" and that he "shall not purchase, possess, use or administer marijuana". Chilcote's parole violation warrant specifically states that Chilcote was being charged with five separate instances of testing positive for marijuana use. Chilcote admitted this charge. As using marijuana is clearly illegal, Chilcote knowingly violated two conditions of his parole, as set forth in his parole certificate.

■ Finally, *Jessup* does not support Chilcote's position. In *Jessup*, the issue was whether a special parolee's due process rights were violated when he was not informed of the possibility of forfeiture of his "street time" prior to the Parole Commission's Notice of Action. The Court held that "due process requires notice prior to the revocation of street time". 889 F.2d at 835. The reasoning behind this holding was that, pursuant to *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), "due process requires notice to a parolee of the violations charged against him prior to revocation so that he may be prepared to respond." *Id.* Moreover, 18 U.S.C. § 4213(c)(3) provides that:

(c) Any summons or warrant [for retaking of parolee] issued pursuant to this section shall provide the parolee with written notice of—

(3) the possible action which may be taken by the Commission.

Thus, in sum, the law requires that at the time a parolee is charged with a parole violation, he must be notified of the charges against him, as well as the possible penalties that may be imposed if it is determined that he has violated the conditions of parole.

■ In the present case, it is clear that Chilcote's parole violation warrant indicated that Chilcote was on a three-year term of special parole and specifically stated that: "A special parole term violator whose parole is revoked shall receive no credit for time spent on parole." This parole violation warrant also set forth the charges (and their factual background) which formed the basis of the warrant.

Consequently, this court finds that Chilcote was given all of the process to which he was due. Although the Bureau of Prisons mistakenly issued a "Certificate of Parole" rather than a "Certificate of Special Parole", this mistake did not deprive Chilcote of any of his rights. The "Certificate of Parole" which Chilcote admittedly received clearly set forth the conditions of parole (which Chilcote admittedly violated), and Chilcote's parole violation warrant clearly set forth the fact that Chilcote was on special parole, and that he was subject to losing all of his street time if his special parole was revoked as a result of parole violations. Thus, there has been no violation of due process in this case.

■ Next, this court will discuss Chilcote's argument that the Bureau of Prisons' jurisdiction over him expired on June 10, 1994, because he was released on regular parole, rather than special parole. The sole basis of this argument is the fact that Chilcote was released on a "Certificate of Parole", not on a "Certificate of Special Parole". Not surprisingly, Chilcote has not presented any authorities in support of his argument that the type of parole a parolee receives is determined by the type of parole certificate he receives.

The government argues that even though Chilcote received a "Certificate of Parole" when he was released, Chilcote was, without a doubt, released on special parole. The basis of the government's argument is the fact that, in 1981, Chilcote was sentenced pursuant to 21 U.S.C. § 841(c), which provided:

A special parole term imposed under this section or section 845 of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term as been revoked may be required to serve all or part of the remainder of the new term of imprisonment. *A special parole term provided for in this section or section 845 of*

*this title shall be in addition to, and not in lieu of, any other parole provided for by law.* (Emphasis added).

The record discloses that Chilcote was released on regular parole on March 23, 1988. This term of regular parole expired on May 2, 1989, and on this date Chilcote began serving his three-year special parole term. Then, on May 15, 1991, a parole violator warrant was issued for Chilcote and his special parole term was subsequently revoked. However, Chilcote was reparoled on October 11, 1991. The government takes the position that Chilcote was necessarily on special parole when he was released in October of 1991, because that was the only type of parole which Chilcote had left to serve. This court finds the government's argument to be persuasive, especially in light of the fact that it does not appear that Chilcote was even eligible for any type of regular parole. (*See* 18 U.S.C. § 4205, which sets out in detail the time which must be served before a prisoner is eligible for consideration for regular parole.)

Finally, the court will consider the issue of whether, on October 11, 1991, Chilcote was illegally reparoled to a special parole term. In *Williams v. United States Parole Commission*, 860 F.Supp. 1 (D.D.C.1994), the district court held that once a parolee's special parole was revoked, the Parole Commission could not impose a second term of special parole. As the factual background in *Williams* is similar to that of the present case, a brief overview is in order. In *Williams*, the plaintiff commenced a five-year special parole term on April 4, 1984. This special parole term was revoked on June 7, 1989 and plaintiff did not receive credit for his 31 months of street time. Plaintiff was incarcerated for 15 months as a result of his parole violation and then reparoled to the remaining 45 months of his special parole term, which was to expire on December 20, 1993. However, on May 20,

1993, the Parole Commission issued a warrant charging plaintiff with violations of his parole. Plaintiff's parole was subsequently revoked and he was again denied credit for 38 months of street time. Plaintiff was sentenced to 16 months incarceration for violating parole, to be followed by 29 months of special parole. Plaintiff then filed a petition for a writ of habeas corpus, arguing that his sentence was illegal.

The district court agreed with the plaintiff. The court adopted the reasoning of several circuit courts which had addressed a similar issue in the context of revocation of supervised release [3]. For example, the Seventh Circuit Court of Appeals has stated:

> This Court agrees that "[o]nce a term of supervised release has been revoked under § 3583, * * * * [t]he term of release no longer exists." [*United States v.*] *Holmes,* 954 F.2d [270] at 272 (5th Cir.1992)]. When a district court revokes a supervised release, the defendant must return to prison to serve the remainder of his sentence. Section (e)(3) gives the district court the discretion to determine how long the defendant will remain in prison, but not the discretion to allocate part of the prison term towards additional supervised release. McGee's original term of supervised release was three years. When the district court revoked that release and sentenced McGee to two years' prison and five years' supervised release, it exceeded its statutory authority.

*United States v. McGee,* 981 F.2d 271, 274 (7th Cir.1992). Taking its cue from the reasoning in *McGee* and *Holmes,* the *Williams* court stated:

> It is of central importance to the Court's task to determine the meaning of the word "revoke" as used in section 841(c). Webster's Ninth New Collegiate Dictionary defines "revoke" as "to annul by recalling or

---

**3.** At the time of the district court's opinion, the supervised release statute 18 U.S.C. § 3583(e)(3) provided, in relevant part, that a court may revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission.

taking back" or to "rescind". (Footnote omitted). The Court finds no suggestion that Congress intended any meaning for the word "revoke" other than in its usual sense. Accordingly, the Court is satisfied that as used in § 841(c), to revoke a term of special parole is to annul it, thereby extinguishing it.

\* \* \* \* \* \*

The Court holds on the basis of the foregoing, that the term of special parole the Commission imposed on the plaintiff in 1989 was not authorized by law. When the Commission exercised its discretion to require the plaintiff to serve a prison term of 15 months, it was thereafter foreclosed from imposing any additional sentence of special parole flowing from the plaintiff's parole violations. The plaintiff fulfilled his obligations to society stemming from his parole violations when he completed his 15 month term of incarceration in March 1990.

*Williams*, 860 F.Supp. at 4.

■■■ This court declines to follow *Williams* for several reasons. First, *Holmes, McGee* and the other circuit court opinions on which the *Williams* court bases its decision are no longer good law. As the government has pointed out in its brief filed December 21, 1994, the supervised release statute was amended on September 13, 1994, and now specifically authorizes successive terms of supervised release[4]. Thus, it is not clear, as the *Williams* court believed, that Congress intended the word "revoke" to mean "rescind" or "annul". Rather, Congress clearly intended for a "revocation" of supervised release to simply mean that the person was subject to further imprisonment and/or supervised release as the authorities find appropriate in the particular case. There is nothing to suggest to this court that Congress had a different intention when it used the word "revoke" in the special parole statute, 21 U.S.C. § 841(c). Consequently,

this court finds that pursuant to 21 U.S.C. § 841(c), the revocation of a parolee's special parole does not extinguish the term of special parole. Rather, the revocation of special parole, like the revocation of supervised release, subjects the parolee to further imprisonment and/or release on another term of special parole.

■■■ Additionally, this court disagrees with the *Williams* court because the *Williams* court failed to give due weight to the Regulations promulgated by the Parole Commission pursuant to 18 U.S.C. § 4203(a)(1). These Regulations clearly contemplate that a special parolee who has had his parole revoked may be reparoled on special parole. Specifically, 28 C.F.R. § 2.52(b) states that:

> If parole is revoked pursuant to this section, the Commission shall also determine, on the basis of the revocation hearing, whether reparole is warranted or whether the prisoner should be continued for further review.

Additionally, 28 C.F.R. § 2.57(c) states, in pertinent part:

> Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term as provided in § 2.52 and subject to reparole or mandatory release under the Special Parole Term.

While the *Williams* court acknowledged these Regulations, it did not give them any consideration because "regulations promulgated by the Commission cannot alter the intent of Congress as expressed in 21 U.S.C. § 841(c)." *Williams*, 860 F.Supp. at 4, n. 5. However, as this court is convinced that the Regulations express the intent of Congress (and do not alter it), this court will give due weight to the Parole Commission's Regulations. Consequently, this court finds that Chilcote was not illegally sentenced when he received a second special parole term on October 11, 1991.

---

**4.** 18 U.S.C. § 3583, as amended by the Violent Crime Control and Enforcement Act of 1994, now provides:

> (h) *Supervised Release Following Revocation.*
> When a term of supervised release is revoked and the defendant is required to serve a term

of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3) the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment.

*Conclusion*

For all of the foregoing reasons, Chilcote's petition for writ of habeas corpus is hereby DENIED.